UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

SCHIAVONE CONSTRUCTION CO., AMERICAN
BRIDGE COMPANY, A Joint Venture,

                                  Plaintiff,

          -against-

THE CITY OF NEW YORK CITY (Macombs Dam
Bridge over the Harlem River),

                                  Defendant.

------------------------------------------------------------------- x

**ANSWER TO AMENDED COMPLAINT**

Index No. 07-CV-8389 (NRB)

        Defendant, The City of New York (the "City"), by its attorney Michael A. Cardozo, Corporation Counsel of the City of New York, in answering the Complaint (the "Complaint") of the plaintiff, Schiavone Construction Co., American Bridge Company, a Joint Venture, (the "Joint Venture"), respectfully alleges as follows:

        1. Denies the allegations set forth in paragraph "1" of the Complaint, but admits that plaintiff purports to proceed as set forth therein.

        2. Denies the allegations set forth in paragraph "2" of the Complaint, but admits that plaintiff purports to set forth grounds for jurisdiction, and respectfully refers the Court to 28 U.S.C. §1332(a) for a full and accurate statement thereof.

        3. Denies the allegations set forth in paragraph "3" of the Complaint, but admits that plaintiff sets forth grounds for venue, and respectfully refers the Court to 28 U.S.C. 1391(a) for a full and accurate statement thereof.

        4. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4" of the Complaint.

5. Denies the allegations set forth in paragraph "5" of the Complaint, but admits that the City of New York is a municipal corporation incorporated under the laws of the State and City of New York with the ability to enter into contracts and, in certain circumstances, to sue and to be sued.

6. Denies the allegations set forth in paragraph "6" of the Complaint, but avers that purported notices of claim were presented to the Comptroller of the City of New York, (the "Comptroller") and that more than thirty days have elapsed since said notices of claim were presented without adjustment or payment thereon.

7. Denies the allegations set forth in paragraph "7" of the Complaint, but admits that the Joint Venture and the City entered into a contract, Contract BRX287-R, (the "Contract"), for the Rehabilitation of the Macombs Dam Bridge in the amount of $136,722.52, on or about April 12, 1999, and respectfully refers the Court to the Contract for its true and complete content and meaning.

8. Denies the allegations set forth in paragraph "8" of the Complaint, and respectfully refers the Court to the Contract for its true and complete content and meaning.

9. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "9" of the Complaint.

10. Denies the allegations set forth in paragraph "10" of the Complaint, but admits that the Joint Venture and the City entered into the Contract, on or about April 12, 1999, and respectfully refers the Court to the Contract for its true and complete content and meaning.

11. Denies the allegations set forth in paragraph "11" of the Complaint, but admits that the Contract is fully funded and constitutes a binding contract between the parties and is on

...

-3-

file with the Comptroller, and respectfully refers the Court to the Contract for its true and complete content and meaning.

12. Denies the allegations set forth in paragraph "12", and specifically denies that it performed all conditions required under the Contract, in that plaintiff has failed to work efficiently, properly man or supervise the project, complete all work, and properly perform the work in accordance with the Contract and the schedule.

13. In response to the allegations set forth in paragraph "13" of the Complaint, defendant repeats and realleges its responses to paragraphs "1" through "12" of the Complaint as though the same were fully set forth herein.

14. Denies the allegations set forth in paragraph "14" of the Complaint.

15. Denies the allegations set forth in paragraph "15" of the Complaint.

16. Denies the allegations set forth in paragraph "16" of the Complaint.

17. Denies the allegations set forth in paragraph "17" of the Complaint, and avers that the City issued change orders to the Joint Venture in accordance with the terms of the Contract.

18. Denies the allegations set forth in paragraph "18" of the Complaint.

19. Denies the allegations set forth in paragraph "19" of the Complaint.

20. Denies the allegations set forth in paragraph "20" of the Complaint.

21. Denies the allegations set forth in paragraph "21" of the Complaint.

22. Denies the allegations set forth in paragraph "22" of the Complaint.

23. In response to paragraph "23" of the Complaint, the City repeats and re-alleges its responses to the allegations set forth in paragraphs "1" through "22" as though fully set forth herein.

24. Denies the allegations set forth in paragraph "24" of the Complaint, but avers that the Joint Venture received change orders to perform extra and additional work which were issued in accordance with the Contract.

25. Denies the allegations set forth in paragraph "25" of the Complaint, but avers that agreement has not been made with respect to the value of all the additional work and that the Joint Venture has not submitted the contractually required documents to enable the City to process the Contract balance.

26. Denies the allegations set forth in paragraph "26" of the Complaint, but avers that the City has paid the Joint Venture $133,327,540.00.

27. Denies the allegations set forth in paragraph "27" of the Complaint.

28. Denies the allegations set forth in paragraph "28" of the Complaint.

29. In response to paragraph "29" of the Complaint, the City repeats and re-alleges its responses to the allegations set forth in paragraphs "1" through "28" as though fully set forth herein.

30. Denies the allegations set forth in paragraph "30" of the Complaint, but avers that pursuant to the terms of the Contract the City retains a percentage of each payment and respectfully refers the Court to the Contract for its true and complete content and meaning.

31. Denies the allegations set forth in paragraph "31" of the Complaint.

32. In response to paragraph "32" of the Complaint, the City repeats and re-alleges its responses to the allegations set forth in paragraphs "1" through "31" as though fully set forth herein.

33. Denies the allegations set forth in paragraph "33" of the Complaint.

34. Denies the allegations set forth in paragraph "34" of the Complaint.

## AS AND FOR A FIRST DEFENSE

35. One or all of the claims in the Complaint are barred by one or more of the provisions of the Contract, whether or not such provision is specifically set forth below.

## AS AND FOR A SECOND DEFENSE

36. One or all of the claims in the Complaint are barred due to plaintiff's failure to comply with the applicable contractual notice provisions.

## AS AND FOR A THIRD DEFENSE

37. The delays of which plaintiff complains in the Complaint were, or should have been, contemplated by plaintiff at the time that plaintiff bid upon, was awarded, and entered into the Contract.

## AS AND FOR A FOURTH DEFENSE

38. Section 1.01.09(a) of the Notice to Bidders, entitled "Examination of Proposed Contract", which is part of the Contract, states in pertinent part:

> Request for Interpretation or Correction - Prospective bidders must examine the Contract Documents carefully and before bidding must request the Commissioner in writing for an interpretation or correction of every patent ambiguity, inconsistency or error therein which should have been discovered by a reasonably prudent bidder.

39. One or all of the claims in the Complaint are based upon matters that plaintiff was obligated to, but failed to, seek an interpretation or correction prior to submitting its bid on the Contract.

## AS AND FOR A FIFTH DEFENSE

40. Section 1.01.08(a) of the Notice to Bidders, entitled "Examination and Viewing of Site and Consideration of Other Sources of Information", which is part of the Contract, states in pertinent part:

> Pre-Bidding (Investigation) Viewing of Site - Bidders must carefully view and examine the site of the proposed work, as well as its adjacent area, and seek other usual sources of information for they will be conclusively presumed to have full knowledge of any and all conditions on, about or above the site relating to or affecting in any way the performance of the work to be done under this contract which were or should have been indicated to a reasonably prudent bidder.

41. Section 1.06.23(H) of the Contract, entitled "Contractor to Examine Site", states in pertinent part:

> The Contractor is assumed to have visited the site of the work and to have familiarized himself with the present conditions, and to have judged for himself the extent and nature of the work to be done under this contract, and no extra compensation will be allowed him because of his failure to include in his bid all costs of labor and materials for which he is required to furnish.

42. One or all of the claims in the Complaint are based upon conditions at the site and its adjacent area which plaintiff did, should, or could have ascertained prior to having submitted a bid on the Contract, or are based upon conditions or circumstances which plaintiff did, should, or could have ascertained from other usual sources of information.

## AS AND FOR A SIXTH DEFENSE

43. Article 11 of the Contract, entitled "Notice of Conditions Causing Delay", provides in pertinent part:

> Within ten (10) days after the commencement of any condition which is causing or may cause a delay in completion, including conditions for which the Contractor may be entitled to an extension of time, the Contractor must notify the Engineer in writing of the effect, if any, of such condition upon the previously approved progress schedule, and must state why and in what respects, if any, the condition is causing or may cause such delay. Failure strictly to comply with this requirement may, in the discretion of the Commissioner, be deemed sufficient cause to deny any extension of time on account of delay in completion arising out of or resulting from such change, extra work, suspension, or other condition. Such failure shall also constitute a waiver by the Contractor, of any and all claims for damages arising therefrom.

44. Plaintiff failed to comply with Article 11 of the Contract.

### AS AND FOR A SEVENTH DEFENSE

45. Article 53 of the Contract, entitled "Claims and Actions Thereon" provides, in pertinent part, that:

> No action at law or proceeding in equity against the City or Department shall lie or be maintained upon any claim based upon the Agreement or arising out of this Agreement or in any way connected with this Agreement unless the Contractor shall have strictly complied with all requirements relating to the giving of notice and of information with respect to such claims, all as herein provided.

46. Accordingly, plaintiff is barred from asserting the claims in the Complaint.

### AS AND FOR AN EIGHTH DEFENSE

47. Plaintiff has already been compensated for changes to the Contract and may not seek damages for delay arising out of work performed pursuant to change orders.

### AS AND FOR A NINTH DEFENSE

48. Article 13(H) of the Contract provides, in pertinent part, that:

-7-

> The Contractor agrees to make no claim for damages for delay in the performance of this Contract occasioned by any act or omission to act of the City or any of its representatives, and agrees that any such claim shall be fully compensated for by an extension of time to complete performance of the work as provided herein.

49. Accordingly, plaintiff may not maintain an action for delay damages.

## AS AND FOR A TENTH DEFENSE

50. Article 42 of the Contract, entitled "Final Payment" provides, in pertinent part, that:

> After completion and final acceptance of the work, the Contractor shall submit all required certificates and documents. A verified statement similar to that required in connection with applications for partial payments shall also be submitted to the Comptroller.
>
> Verified Statement of Claims. The Contractor must submit a final verified statement of any and all alleged claims against the City, in any way connected with or arising out of this contract... setting forth with respect to each such claim the total amount thereof, the various items of labor and materials included therein, and the alleged value of each such item; and if the alleged claim be one for delay, the alleged causes of each such delay, the period or periods of time, giving the dates, when the Contractor claims the performance of the work, or a particular part thereof, was delayed, and an itemized statement and breakdown of the amount claimed for each such delay... The Contractor is warned that unless such claims are completely set forth as herein required, the Contractor upon acceptance of the final payment, pursuant to Article 44 hereof, will have waived such claims.

51. Plaintiff's claims for payment in its second and third causes of action are premature as plaintiff has not complied with the requirements of Article 42. Therefore, some or all of its claims must be dismissed.

## AS AND FOR A ELEVENTH DEFENSE

52. Article 13E of the Contract, entitled "Application for Extension of Time" provides, in pertinent part, that:

> 1. Before the contractor's time extension request may be approved, the contractor must within five (5) days after commencement of the condition which allegedly has caused or is causing the delay, submit a written application to the Agency Chief Contracting Officer identifying:
>
> (a) The contractor; the contract registration number; and project description;
>
> (b) liquidated damages assessment rate, as specified in the contract;
>
> (c) original bid amount;
>
> (d) the original contract start and completion date;
>
> (e) any previous time extensions granted (number and duration); and
>
> (f) the extension of time requested.
>
> 2. In addition, the application for extension of time shall set forth in detail:
>
> (a) the nature of each alleged cause of delay in the completing the work;
>
> (b) the date which each such cause of delay began and ended and the number of days attributable to each such clause;
>
> (c) a statement that the contractor waives all claims except for those delineated in the application, and the particulars of any claims which the contractor does not agree to waive. <u>For time extensions for substantial and final completion payments, the applications shall include a detailed statement of the dollar amounts of each element of claim item reserved</u> (emphasis added); and

> (d) a statement indicating the contractor's understanding that the time extension is granted only for the purposes of permitting continuation of contract performance and payment for work performed and that the City retains its right to conduct an investigation and assess liquidated damages as appropriate in the future.

53. Plaintiff's claim for its substantial/final payment and retainage should be dismissed because plaintiff has failed to comply with the requirements of Article 13E.

### AS AND FOR A TWELFTH DEFENSE

54. Article 44 of the Contract, entitled "Acceptance of Final Payment" provides, in pertinent part, that:

> Final payment will be made only upon completion of the final punch list.

55. Plaintiff has failed to complete the final punch list. Accordingly, plaintiff is not entitled to final payment at this time. Thus, some or all of plaintiff's claims are barred.

### AS AND FOR A THIRTEENTH DEFENSE

56. Plaintiff is estopped from asserting one or all of the claims in the Complaint.

### AS AND FOR A FOURTEENTH DEFENSE

57. Plaintiff has waived one or all of the claims in the Complaint.

### AS AND FOR AN FIFTEENTH DEFENSE

58. The damages, if any, sustained by plaintiff were the result of plaintiff's own culpable conduct.

### AS AND FOR A SIXTEENTH DEFENSE

59. To the extent that the Complaint seeks to allege claims based on breaches of oral agreements, representations, and statements, such claims are barred by the applicable statute of frauds.

### AS AND FOR A SEVENTEENTH DEFENSE

60. To the extent that plaintiff is seeking compensation on extra and additional work, its claim is barred as plaintiff failed to comply with the dispute resolution requirements of Article 27 of the Contract and the New York City Procurement Policy Board Rules.

### AS AND FOR A EIGHTEENTH DEFENSE

61. Plaintiff fails to state a claim upon which relief can be granted.

### AS AND FOR A NINETEENTH DEFENSE

62. Plaintiff has failed to duly perform and complete all the work in accordance with, and as required by, the Contract.

### AS AND FOR A FIRST COUNTERCLAIM

63. The New York City Department of Transportation is an agency of the City of New York, (the "City") which is a municipal corporation organized and existing under, or by virtue of, the laws of the City and State of New York.

64. Upon information and belief, Schiavone Construction Co.,/American Bridge Company, (the "Joint Venture") is composed of Schiavone Construction Co., a corporation organized under the laws of the State of New Jersey, and American Bridge Company, a corporation organized under the laws of the State of Delaware.

65. On or about April 12, 1999, the City, acting through its Department of Transportation, awarded Contract number BRX287-R, (the "Contract"), in the amount of $136,722.52, to the Joint Venture, wherein the Joint Venture agreed to perform all work necessary for the rehabilitation of the Macombs Dam Bridge, located in the City of New York which carries traffic between the Boroughs of the Bronx and Manhattan in the vicinity of Yankee Stadium. The Contract is referred to and incorporated herein with the same force and effect as though fully set forth at length.

66. Article 16 of the Contract, entitled "Liquidated Damages", states in pertinent part:

> In case the Contractor fails to complete the Work within the time fixed for such completion in Schedule "A", or within the time to which such completion may have been extended or, if the Contractor in the sole determination of the Commissioner, has abandoned the Work, the Contractor must pay to the City the sum fixed in Schedule "A", for each and every day that the time consumed in completing the work exceeds the time allowed therefor; which said sum, in view of the difficulty of accurately ascertaining the loss which the City will suffer by reason of delay in the completion of the work hereunder is hereby fixed and agreed as the liquidated damages that the City will suffer by reason of such delay, and not as a penalty.

67. Schedule "A" fixes the sum of $1,000.00 as the liquidated damages, which the Joint Venture must pay the City for each and every calendar day that the project is delayed.

68. Special Provision 73 of the Contract entitled "Supplementary Liquidated Damages" states in relevant part:

> <u>Local Lane Closures</u> – During the execution of the work, the Contractor is permitted to close lanes in accordance with the Maintenance and Protection of Traffic Patterns provided on the Contract Drawings. He may develop additional traffic patterns and request approval from the Engineer for their use. Many of these lane closures are restricted as to the hours in which they may be employed. For example, several of the Traffic Patterns may only be implemented between 10:00 A.M. and 5:00 A.M. If any of the Contractor's operations which affect traffic flow extend beyond the allowable time frame, as specified, the Contractor will be assessed liquidated damages of $200 per minute until these operations have been completed and traffic flow is restored.

69. The Joint Venture caused delay to the project on at least 982 calendar days. As a result, the Joint Venture is liable for at least 982 calendar days in additional time spent to complete the project. The Joint Venture's operations also caused lane closures of at least one hour beyond the allowable time frame, on or about November 1, 2002.

70. Therefore, the City is entitled to recover from the Joint Venture liquidated damages, in an amount estimated to be no less than $994,000.00, to be proved at trial.

## AS AND FOR A SECOND COUNTERCLAIM

71. The City repeats and realleges each and every allegation contained in paragraphs "63" through "70" as if fully set forth herein.

72. Article 3 of the Contract, entitled "Character of the Work", states in pertinent part:

> Unless otherwise expressly provided in the Contract Drawings, Specifications and Addenda, the work must be performed in accordance with the best modern practice, with materials and workmanship of the highest quality, to the satisfaction of the Commissioner.

73. Article 4 of the Contract, entitled "Means and Methods of Construction", states in pertinent part:

> Unless otherwise expressly provided in the Contract Drawings, Specifications and Addenda, the means and methods of construction shall be such as the Contractor may choose; subject, however, to the Engineer's right to reject means and methods proposed by the Contractor which:
>
> a. will constitute or create a hazard to the work, or to persons or property; or
>
> b. will not produce finished work in accordance with the terms of the contract.

> The Engineer's approval of the Contractor's means and methods, or his failure to exercise his right to reject such means and methods, shall not relieve the Contractor of his obligation to accomplish the result intended by the contract; nor shall the exercise of such right to reject create a cause of action for damages.

74. Article 7 of the Contract, entitled "Protection of Work, Persons and Property", states in pertinent part:

> During performance and up to the date of final acceptance, the Contractor shall be under an absolute obligation to protect the finished and unfinished work against any damage, loss, injury or death; and, in the event of such damage, loss or injury, he shall promptly replace or repair such work, whichever the Engineer shall determine to be preferable. The obligation to deliver finished work in strict accordance with the contract prior to final acceptance shall be absolute and shall not be affected by the Engineer's approval of or failure to prohibit means and methods used by the Contractor.
>
> During performance and up to the date of final acceptance, the Contractor must take all reasonable precautions to protect the persons and property of others from damage, loss, injury or death resulting from his or his sub-contractor's operations under this contract, except such property as the owners thereof may themselves be under legal duty to protect. The Contractor's obligation to protect shall include the duty to provide, place and adequately maintain at or about the site, suitable and sufficient guards, lights, barricades and enclosures.

75. Special Provision 4 of the Contract, entitled "Superintendent", states in pertinent part:

> The Contractor shall have a fully competent superintendent in charge of the work at the site. Any careless or incompetent superintendent or employee shall be removed forthwith by the Contractor when notified to do so in writing by the Engineer or his designated representative.

76. Special Provision 7 of the Contract, entitled "Responsibility of Contractor for Plants and Methods", states in pertinent part:

> The plant, equipment, scaffolding, methods, appliances and procedures shall be such as will secure a satisfactory quality of work, safe and adequate means for inspection, and a rate of progress which, in the opinion of the Engineer, will insure the completion of the work within the time specified. If at any time before the commencement or during the progress of the work, or any part of it, such plant, equipment, scaffolding, methods or appliances appear to the Engineer to be unsafe, inefficient or inadequate for securing the safety of the workers, structure, the quality of work and rate of progress required, he may order the Contractor to increase their safety and efficiency or to improve their character and the Contractor shall comply with such orders; the failure of the Engineer to make such demands shall not relieve the Contractor from his obligation to secure the safe conduct, and the Contractor alone shall be responsible for the safety, efficiency and adequacy of his plant, equipment, scaffolding, appliances and methods.

77. In breach of the Contract, the Joint Venture failed to perform work in accordance with the best modern practices and workmanship of the highest quality, used methods and means of construction which constituted and created a hazard to the work and property, did not take all reasonable precautions to protect the work and property from damage, failed to have a fully competent superintendent at the site, and failed to use proper methods to perform its work.

78. As a result, the Joint Venture during construction damaged the Macombs Dam Bridge, on March 18, 2004. This resulted in damages to the City for increased personnel, field office, architects, traffic agents, and construction management costs of at least $1,342,498.62 to be proved at trial.

## AS AND FOR A THIRD COUNTERCLAIM AND SETOFF

79. The City repeats and realleges each and every allegation contained in paragraphs "63" through "78" as if fully set forth herein.

80. The Macombs Dam Bridge, located in the City of New York carries traffic between the Boroughs of the Bronx and Manhattan in the vicinity of Yankee Stadium. Its use by hundreds of thousands of commuters on a daily basis, makes it a vital part of the transportation infrastructure of the City, and, as such, the City's economy.

81. The Joint Venture failed in its duty to the City and the public to take reasonable precautions to protect the Macombs Dam Bridge from damage and as a result of its negligent operations, the Macombs Dam Bridge was damaged and its moveable swing span was damaged and caused to be misaligned.

82. Specifically, on or about March 18, 2004, the Joint Venture employee in charge of operating the Bridge ignored a warning indicating that there was a problem with the actuator leg, which provides support to the bridge's foundation when the bridge is in the closed position and allows the bridge to swing open when needed. Instead of investigating the warning, said Joint Venture employee continued to open the swing span. This caused the North West actuator leg to hit the South West bearing plate and pedestal, shearing off anchor bolts in the pedestal, and which, in turn, sent a sinusoidal force wave down the entire length of the Macombs Dam Bridge and back again.

83. As a result of the Joint Venture's negligence the City suffered damages for increased personnel, field office, architects, traffic agents, and construction management costs of at least $1,342,498.62 to be proved at trial.

## AS AND FOR A FOURTH COUNTERCLAIM

84. The City repeats and realleges each and every allegation contained in paragraphs "63" through "83" as if fully set forth herein.

85. The Joint Venture has failed to complete the work and a punch list remains to be completed.

86. The following items of work have not been completed by the Joint Venture: a hydrographic survey of the channel's bottom, the replacement of unacceptable 'Type M' light poles, the completion of the stone clean-up of the Gale Houses by sandblasting the stone, the installation of sidewalk luminaries at the camelback truss, the repair of the machinery room hatch, the replacement of a damaged laptop, verifying that the street lights are operational and phases have been verified, the tagging of incoming conduits and verification for final inspection, and the replacement of gaskets on the pull boxes and verification for final inspection.

87. The value of the punch list work is estimated to be at least $665,100.00. This amount may increase depending on the actual costs to complete the work if the Joint Venture fails to perform said punch list work

88. Therefore, the Joint Venture is liable to the City in an amount estimated to be no less than $665,100.00.

**WHEREFORE**, Defendant City demands judgment in its favor dismissing the Complaint in its entirety and awarding damages with respect to its first counterclaim in an amount estimated to be no less than $994,000.00, with respect to its second counterclaim for an amount estimated to be no less than $1,342,498.62, with respect to its third counterclaim and setoff for an amount estimated to be no less than $1,342,498.62, and with respect to its fourth

-18-

counterclaim for an amount estimated to be no less than $665,100.00, and for such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         February 29, 2007

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendant
                        100 Church Street
                        New York, New York 10007
                        (212) 788-1198

By:     */s/ Richard Schulsohn*
         Richard Schulsohn (RS 0582)
         Assistant Corporation Counsel

TO:   Vincent J. Torna
      Attorney for Plaintiff
      Schiavone Construction Co and
      American Bridge Company, a Joint Venture
      101 East 52nd Street, 21st Floor
      New York, New York 10022
      (212) 644-1192